**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X

In Re:                                                                              Chapter 7

STEVEN & BRANDENE JACKUS,                                          Case No.: 09-28290 (MBK)


                                            Debtors.
--------------------------------------------------------X

APPEARANCES:

John F. Bracaglia, Jr.
Cohn, Bracaglia & Gropper
275 East Main Street
P.O. Box 1094
Somerville, New Jersey 08876
Attorney for Debtors, Steven and Brandene Jackus

Andrea Dobin
50 West State Street, Suite 1400
P.O. Box 1298
Trenton, New Jersey 08607
Forked River, New Jersey 08731
Attorney for Barry Sharer, Chapter 7 Trustee for Steven and Brandene Jackus


**MICHAEL B. KAPLAN, U.S.B.J.**


## OPINION

### I.    INTRODUCTION

      This matter comes before the Court by way of the Chapter 7 Trustee's ("Trustee")

Motion for an Order approving the sale of an annuity pursuant to the New Jersey Structured

Settlement Protection Act, N.J.S.A. 2A:16-63, *et seq*.  The principal issues before the Court are:

(1) whether the Bankruptcy Court has jurisdiction to approve the sale; and, (2) whether the sale

1

satisfies the requirements of the New Jersey Structured Settlement Protection Act outlined in N.J.S.A. 2A:16-66.

For the reasons set forth below, the Court finds that the Bankruptcy Court has jurisdiction to determine whether the annuity, as property of the bankruptcy estate, may be sold by the Trustee. 28 U.S.C. § 1334(e); 11 U.S.C. § 541(a). The Court further finds that the sale satisfies the N.J.S.A. 2A:16-66 requirements in that: (1) the transfer is in the "best interests" of both the Trustee and Brandene Jackus, the original payee; (2) the buyer, Edward Piecewicz, has advised the Trustee to seek independent advice regarding the transfer; and, (3) the transfer does not contravene any applicable statute or the order of any court or other government authority. Accordingly, the Trustee's Motion for an Order approving the sale is granted.

## II. PROCEDURAL HISTORY/FACTS

On July 15, 2009, Steven and Brandene Jackus filed a joint and voluntary Chapter 7 Bankruptcy Petition ("the Debtors"). On July 25, 2009, Barry R. Sharer was appointed as the Chapter 7 Trustee. The Trustee conducted the first meeting of creditors pursuant to 11 U.S.C. § 341 on July 16, 2009.

At the first meeting of creditors, the Debtor disclosed her interest in payments from a June 1996 settlement agreement ("Settlement Agreement") between the Debtor, Brandene Jackus (f/k/a Brandene Nicosia) and Thomas Szaro. The Settlement Agreement was the result of an accident that took place in 1991 in which Brandene Jackus suffered injuries. The Settlement Agreement, entered into by the Debtor and Liberty Mutual Insurance Company, provided for five lump sum payments, totaling $190,000.00, over the course of 18 years. The lump sum payments were to be made as follows: $15,000.00 on March 19, 1999; $20,000.00 on March 19, 2002; $25,000.00 on March 19, 2007; $40,000.00 on March 19, 2012; and, $90,000.00 on March

17, 2017.  In order to make the payments in the manner described in the Settlement Agreement, the settlement was to be paid through an annuity, created for the benefit of Brandene Jackus (the "Annuity").  The Annuity issuer was Liberty Life Assurance Company of Boston, commercially known as Liberty Mutual.  Under the terms of the Settlement Agreement, the Annuity was assigned to Keyport Life Ins. Co. ("Keyport").  The Debtor received the 1999, 2002, and 2007 payments but has yet to receive the remaining $130,000.00 under the terms of the Annuity.

The Trustee seeks to sell the Debtors' interest in the future payments of the Annuity for the benefit of the Debtors' creditors.  The Trustee filed a notice of proposed private sale on June 10, 2010.  The Debtors objected on June 30, 2010.  On August 19, 2010, this Court entered an order overruling the Debtors' objection to the proposed private sale.  In so doing, the Court ruled that the Annuity was property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a).  The Court further ordered that the Trustee conduct an auction of the Annuity within thirty (30) days of the date of the order.  Dkt. ¶ 51.  At auction, the Trustee received an offer from Edward Piecewicz ("the Buyer"), to purchase the Annuity proceeds for $64,837.00.  This was the highest offer.  The Trustee filed an application for entry of an order approving the sale of the Annuity on September 21, 2010.  On October 1, 2010, this Court entered said order.  Upon the Trustee's request, consistent with the requirements of the purchaser, the order provided that the consummation of the sale of the Annuity would be conditioned on the **state** court finding that the sale complied with the Structured Settlement Protection Act.

Following the entry of the order, the Buyer filed a Complaint with a request for an Order to Show Cause seeking state court approval of the sale.  The Complaint was filed in Camden County, was assigned docket number L5601-10 and assigned to Judge Michael E. Kassel, J.S.C.  On December 10, 2010, the parties appeared before Judge Kassel.  Judge Kassel, *sua sponte*,

declared that he lacked subject matter jurisdiction to consider approval of the sale of the Annuity under the Structured Settlement Protection Act. Judge Kassel ruled that the Annuity was property of the bankruptcy estate and that the state court, therefore, had no role to play with regard to its sale. Counsel to the Trustee was directed to, and did, submit a proposed order of dismissal. The order was entered on December 16, 2010.

On January 3, 2011, at a Status Conference convened by this Court, the Court instructed the Trustee to submit an application for an order approving the sale of the Annuity in accordance with the Structured Settlement Protection Act. On January 5, 2011, the Trustee submitted said application. After reviewing the application and applicable law, the Court is prepared to rule.

### III.    JURISDICTION

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984 referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (N). Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a). The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

### IV.    DISCUSSION

#### A. Bankruptcy Court's Jurisdiction to Approve the Sale

The issue is whether this Court has jurisdiction to approve the Trustee's sale of the Annuity to the Buyer. Central to deciding this inquiry is whether the Annuity is property of the bankruptcy estate. The Court previously decided, in its August 19, 2010 order, that the Annuity

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

4

was property of the estate.[2] Dkt. ¶ 51. Therefore, this Court, pursuant to 28 U.S.C. § 1334(e)(1), has exclusive jurisdiction over the Annuity. However, the Court must look to state law to determine the legal and equitable interests in the property inasmuch as the state law affects the Trustee's right to sell the Annuity.

The bankruptcy estate includes "all legal or equitable interests of the debtor in property" as of the filing date of the petition. 11 U.S.C. § 541(a). Moreover, "[a]n interest of the debtor in property becomes property of the estate under subsection (a)(1) . . . notwithstanding any provision in an agreement, transfer, instrument, or applicable non-bankruptcy law . . . that restricts or conditions transfer of such interest by the debtor . . . " 11 U.S.C. § 541(c)(1)(A). In its initial objection to the proposed private sale of the Annuity, the Debtors argued that the terms of a Unified Qualified Assignment assigning the Annuity to Keyport contained anti-assignment provisions. However, pursuant to § 541(c)(1)(A), the anti-assignment provisions in the Annuity are not strictly enforceable. This is not only clear from the above-quoted statutory provisions, but also finds support in the relevant case law. See In re Sparks, 2005 WL 1669609 (Bankr. W.D. Tenn. 2005) (holding that a debtor's right to receive payments is property of the bankruptcy estate); In re Kent, 396 B.R. 46 (Bankr. D. Ariz. 2008) (finding that the debtor's annuities became property of the estate by virtue of 11 U.S.C. § 541(c)(1)(A), notwithstanding any contractual anti-assignment language to the contrary).

As property of the bankruptcy estate, this Court has jurisdiction to determine whether the Annuity may be sold by the Trustee. 28 U.S.C. § 1334(e)(1) provides:

> The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

---

[2] Although the Court has already concluded that the Annuity is property of the estate, the Court now seeks to provide a more thorough analysis of how it reached this conclusion.

5

Id. See In re Paul, 355 B.R.64, 66 n.1 (Bankr. N.D. Ill. 2001) ("[The Bankruptcy Court] clearly has jurisdiction to determine what is property of the estate and to determine whether property of the estate may be sold by the trustee").

Although the Annuity is properly categorized as property of the bankruptcy estate, the Court must look to state law to determine the exact nature of the Trustee's property interest. See Butner v. United States, 440 U.S. 48, 44, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (holding that "property interests are created and defined by state law.")); In re Fernandos, 402 F.3d 147, 156 (3d Cir. 2005) (recognizing the federal court's deference to state law when it comes to defining property interests)). This finds further support in 28 U.S.C. § 959(b), which provides:

> [A] trustee . . . appointed in any cause pending in any court of the United States . . . shall manage and operate the property in his possession as such trustee . . . *according to the requirements of the valid laws of the State in which such property is situated*, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

Id. (*emphasis added*). The Structured Settlement Protection Act, N.J.S.A. 2A:16-63, *et seq.*, governs the transfers of annuities. Accordingly, the Court must now determine whether the sale at issue comports with the Structured Settlement Protection Act.

**B. The Structured Settlement Protection Act, N.J.S.A. 2A:16-63, *et seq*.**

Transfers of structured settlement payments, the property interest at issue, are governed by the Structured Settlement Protection Act ("the SSPA"). N.J.S.A. 21:16-63, *et seq.* The SSPA, enacted in 2001, is a series of "consumer protections" designed to "protect[ ] recipients of long-term structured settlements from aggressive marketing by factoring companies seeking to persuade these people to cash out future payments at sharp discounts." Senate Commerce Committee Statement to Senate Committee Substitute for S-944 (June 15, 2000), at ¶ 2;

Sponsor's Statement to A-2146 (introduced February 28, 2000), at ¶ 1.[3] This stream of payments is tax-free and tailored to the recipient's future needs. Id. The Legislature recognized the strong public policy benefits structured settlements provide, specifically:

> Structured settlements . . . provide long-term protection for injury victims and their families. They provide against the loss or dissipation of lump sum recoveries. Factoring companies, commonly using phone banks, advertising and high-pressure sales to "buy" the settlement for a small lump-sum, undermine these benefits and may exploit an injured person at a time when they need cash.

Id. at ¶ 2.

To best protect the interests of said recipients, the Legislature mandates that no Annuity transfer may be effectuated without a final court order approving the sale. N.J.S.A. 2A:16-66.[4] The statute provides that:

> No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been approved in advance in a final court order or order of a responsible administrative authority based on express findings by the court or reasonable administrative authority that:
>
> a. The transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependants;
>
> b. The payee has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received the advice or knowingly waived the right to seek that advice in writing; and
>
> c. The transfer does not contravene any applicable statute or the order of any court or other government authority.

N.J.S.A. 2A:16-66.

---

[3] The SSPA is similar to laws adopted in other states. See, e.g., Cal. Ins.Code § 10137(a)(voiding transfers of structured settlement payment rights unless the transfer is "fair and reasonable and in the best interest of the payee"); 10 Del.Code Ann. § 6601(3) (prohibiting structured settlement transfers unless a court finds transfer is "fair and reasonable and in the best interests of the payee and the payee's dependents").

[4] Unlike its counterparts in other states, the SSPA does not require "state court" approval. Instead, the New Jersey statute merely requires a final court order. Cf. In re Paul, 355 B.R. 65, 67 (Bankr. N.D. Ill. 2001)(holding that "Section 155.34 of the Illinois Insurance Code expressly prohibits the beneficiary of a structured settlement from assigning the payments under a structured settlement without prior approval of a *state court*") (*emphasis added*)).

Whether or not a proposed transfer is in the best interests of the recipient requires a case-by-case analysis. Outside of bankruptcy, the Court's function under the SSPA is to determine whether the transfer is in the "best interests" of the injury victim. See In re Spinelli, 353 N.J. Super. 459, 803A.2d 172, 176 (Law Div. 2002) ("In essence, the term [best interests] refers to optimizing the condition of the person, entity or public interest that the law is designed to protect"). Here, the Debtor, Mrs. Jackus, is "the person . . . the law is designed to protect." Id. However, the Court's analytical focus must shift in the context of a bankruptcy. The Annuity, as property of the bankruptcy estate, is managed and controlled by the Trustee on behalf of the estate. See 11 U.S.C. § 323(a)("The trustee . . . is the representative of the estate."). In other words, the Trustee is the payee under the SSPA. N.J.S.A. 2A:16-64; N.J.S.A. 2A:16-66(a). As such, the Court must determine whether the transfer is in the best interest of the estate and its creditors. The Court, for the reasons discussed below, finds that the sale is in the estate's best interest and, therefore, will approve the Trustee's application.

The Court pauses to recognize that a debtor's best interests should be taken into account if and/or when the estate generates a surplus, sufficient to satisfy administration expenses and all creditor claims with interest. However, no such surplus exists in the instant proceeding. The Claims Register indicates that the Proofs of Claim asserting general unsecured claims exceed $111,000.00. Schedule C of the Debtors' bankruptcy petition reflects that the Debtors have claimed an exemption in the amount of $28,042.00, pursuant to 11 U.S.C. § 522(d)(11)(D) and 11 U.S.C. § 522(d)(5). Once the claimed exemption, attorney's fees, accounting fees, and statutory commission are considered, it becomes clear that the estate will not generate a surplus and the portion of the Annuity to which Mrs. Jackus will be entitled is limited to her claimed exemption. Therefore, what is in Mrs. Jackus's best interest should not be, and is not, a central

8

focus of the Court's analysis. That being said, the transfer of the estate's interest is, in fact, in the best interest of the Debtor because it will enable her to receive her exemption amount in an immediate lump sum, rather than on an extended basis, which, in this case will not be realized until 2017. See In re Sparks, 2005 WL 1669609, *5 (Bankr. W.D. Tenn. 2005) (finding it preferable for the debtor to receive her exemption as a lump sum). Clearly, Mrs. Jackus is in a better position having discharged over $111,000.00 of debt, while maintaining an immediate entitlement to her $28,042.00 exemption, as opposed to retaining a future right to receive $130,000.00 along with $111,00.00 of outstanding liabilities.

With regard to the instant issue, the Court finds that the proposed sale is in the best interest of the estate and its creditors. On October 1, 2010, the Court entered an order granting the Trustee's application approving the sale of the Annuity. Dkt ¶ 56. In so approving, the Court deferred to the Trustee's business judgment.[5] See In re Psychometric Systems, Inc., 367 B.R. 670, 674 (Bankr. D. Colo. 2007) (holding that the trustee's business judgment is given great judicial deference). Specifically, in its application to the Court, the Trustee disclosed that it held auction to sell the Annuity on September 16, 2010. At the auction, the Trustee deemed the Buyer's offer of $64,837.00 the highest and best offer for the Annuity. There is no contention that the bid is inadequate. "Generally speaking, an auction may be sufficient to establish that one has paid 'value' for assets of a [debtor]." See In re Abbots Dairies of Pennsylvania, 788 F.2d 143, 147 (3d Cir. 1986). Moreover, the Court believes it is in the best interests of the creditors to receive an immediate distribution instead of receiving payment on the Annuity in the ordinary

---

[5] For procedural clarification, upon the request of the Trustee, the Court conditioned the sale's consummation on the state court's finding that the sale complied with N.J.S.A. 2A:16-63, *et seq.* After further reflection, the Court should have, *sua sponte*, determined whether the sale was in the best interests of the estate (satisfying the statutory criteria) because this Court is better equipped to address the implications of the sale on the estate and its creditors. See In re Sparks, 2005 WL at *6 ("When, as the result of the bankruptcy case, a debtor's interest in structured settlement payments is limited to her exemption amount, the requirement of state court approval for assignment serves no purpose. The bankruptcy court is in the better position to determine whether the proposed sale is in the best interest of creditors of the estate").

course.[6] See In re Sparks, 2005 WL at *5 (approving the trustee's sale of the estate's right to receive future payments for a lump sum rather than wait for each payment to be received). In light of the above discussion, the Court determines that the subsection (a) requirement has been met.

The Court also finds that subsections (b) and (c) of the statute have been met. First, with respect to subsection (b), the record clearly reflects that the Trustee was advised in writing to seek independent professional advice regarding the transfer. In a transfer agreement executed between the parties, the Trustee signed an agreement that included the following provision: "The 'Payee' has received or waived the right to receive independent professional advice regarding the legal[,] tax and financial implications of the transfer." Dkt.¶ 62, Ex. A. Additionally, Barry Sharer, the Trustee, signed a "Statement of Professional Representation" that acknowledges that the Buyer advised him to obtain independent professional representation. Id. Second, there is nothing in the record, nor has either party suggested, that "the transfer contravenes any applicable statute or the order of any court or other government authority." N.J.S.A. 2A:16-66(c).

## V.    CONCLUSION

For the foregoing reasons, this Court rules that the Bankruptcy Court has jurisdiction to approve the Trustee's sale of the Annuity because the Annuity is property of the bankruptcy estate and the approval scheme prescribed in N.J.S.A. 2A:16-66 does not limit approval to state courts. Furthermore, the sale comports with the N.J.S.A. 2A:16-66 requirements in that it is in the "best interests" of the estate; the Buyer advised the Trustee to obtain independent professional advice regarding the sale; and, the sale does not contravene other applicable law.

---

[6] If the Court were to wait for the Trustee to receive payment on the Annuity in the ordinary course, creditors would have to wait at least six years for a distribution to be made. The Court, however, believes an immediate distribution is preferable for all interested parties.

Accordingly, the Court grants the Trustee's Motion for an Order approving the sale of the Annuity. Trustee is directed to submit a form of order.

Dated: January 14, 2011

                                                  */s/ Michael B. Kaplan*
                                                  Honorable Michael B. Kaplan
                                                  United States Bankruptcy Judge